# De Lazardi, & Co. *vs* Hewitt, Allison, & Co.

CHANCERY.

*Case* 163.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Factors. Agents. Partners and Partnership.*

October 11.

JUDGE SIMPSON delivered the opinion of the Court.

Case stated.

DE LAZARDI & Co. of New Orleans, and Hewitt, Allison & Co. of Louisville, Kentucky, entered into an agreement in February, 1841, to purchase a large quantity of sugar, on joint account, to be sold by the latter in Louisville, free of charges and commissions, except actual expenses; the profits or losses to be equally shared. The sugar was purchased, shipped to Louisville, and there sold under this agreement. A general depression in business that season, operated adversely to the success of the adventure, and occasioned a considerable loss to the parties concerned. A large portion of the sugar having been sold on credit and some of the purchasers having failed, whereby the loss on the speculation was greatly increased, a contest has arisen among the parties in relation to the loss on the credit sales, the plaintiffs in error insisting it should all fall on the house in Louisville, and the latter house contending it is only liable for one half.

It appears in proof that the sugar market in Louisville in the spring and summer of that year, was unusually dull and inactive, and sales of sugar were generally on credit. And it is alledged by Hewitt, Allison & Co. in their bill, and not denied by the answer, that it was distinctly understood by the parties when the adventure was agreed upon, that most of the sales would, in all probability, have to be on credit.

If the firm of Hewitt, Allison & Co. were to be regarded in this transaction, as the mere agents of De Lazardi & Co., and the sugar had been consigned to them as such, to sell in the usual way in Louisville, even then their liability for the losses that have occurred on sales made by them, would be very questionable. A general

A factor or general agent to sell, is not personally liable for losses arising from sale on credit, where he adheres to the custom of the place where the sales

DE LAZARDI
vs
HEWITT, ALLI-
SON & Co.

are made, and
the purchasers
are good at the
date of the sales,
and the principal
had reasonable
e.

agent or factor, selling to a person of good credit at the time, payable at a future day, where the usage is to sell upon credit, is not liable though such vendee may afterwards become insolvent, provided the credit given was reasonable and usual, and his principal was made acquainted with the transaction within a reasonable and usual space of time: (*Smith's Mercantile Law, side page,* 87.)

The proof is abundant that the sales upon which losses have been sustained by the subsequent failure of the vendees, were made to persons who, at the time, were in good standing and credit, and to whom sales on time would then have been made by the most prudent and cautious dealers in Louisville. There is some contrariety in the evidence in regard to the usual credit given at that period upon sales of sugar; some of the witnesses stating that four months was the usual credit, and others that there was no particular usage on the subject, sales being frequently made on a credit of four or six months with a promise of renewal at the expiration of the time; from which the inference is fairly deducible, that the course of trade in this article, had not then a fixed and limited credit, an extension beyond which should be considered as unreasonable. The sales having been made on the most advantageous terms that could be procured, the article of sugar going off very heavily in market that season, there is nothing in the credit given, that can subject the house of Hewitt, Allison & Co., to liability for the whole loss occasioned by the failure of the vendees.

It is not denied that an account of the sales was made and transmitted to De Lazardi & Co. within a reasonable time, but it is contended that the account was unfair and deceptive, and not calculated to apprise the owners of the sugar of the true nature and character of the sales which had been made. The sales on time, where interest was payable from the day of sale, were entered on the account equal to cash, without noting the length of credit given, and the credit given on sales where there was a promise of renewal, was alone mentioned, no allusion being made to the agreement for further extension of time on the expiration of the credit. The evidence is contra-

dictory in relation to the construction that would be given by merchants to an account made in this way. Some of the witnesses proving, equal to cash, would be understood to mean, the money was secured so as to make it equal to cash, and the consignor as having a right, on such an account having been rendered, to call on the consignee immediately, for the amount of sales, whilst others prove it would be understood by merchants to mean only, that although the sale was on credit, yet the money carried interest and was thereby equivalent to cash. From the evidence, the account may be regarded as ambiguous, and if it stood alone without any explanation, might not be deemed such as the law requires the agent to return to his principal. But the account was taken to New Orleans by the chief clerk of Hewitt, Allison & Co., who had made it out, and was thoroughly acquainted with the whole transaction, and who having a letter of introduction from his employers to De Lazardi & Co., had a personal interview with some of the members of the firm, handed them the account of sales, and according to his recollection, explained it fully. If, however, no explanation was actually made, he was there prepared to explain any part of the account that is at all equivocal; and if it were not understood, or its meaning regarded as doubtful by them, it was their duty to have made such enquiries as was necessary to its full comprehension. It is obvious, however, they sustained no injury by the entries as made. They assert, it is true, they would have obtained a guarantee, had they learned from the account, the sales were on credit. The idea of loss from the want of this information is, however, repelled by the fact that no guarantee was procured by them on the sales expressly entered on the account as made on time.

Should there be however any doubt as to the liability of Hewitt, Allison & Co., regarding them as agents, there is another aspect of the transaction, in which, in our opinion, their liability cannot be extended beyond one half of this loss. The two houses were in reality partners in the speculation. The purchase of the sugar was a joint one, and in the sales there was to be a community of profit and loss. There may be a partnership in one

Partners are each bound to bear their equal part of loss, unless there has been a culpable unfaithfulness in duty to the absent partner.

adventure as well as in a continuing business. Such a partnesrship existed on this occasion. The respective rights and liabilities of the parties must therefore be determined, not by the law in relation to principal and agent, but by the terms of the partnership and the law on this subject. The loss incurred has therefore to be divided between them, unless the house in Louisville, by its conduct in some respect, has made itself liable as a partner in this transaction for the whole of it. It results from that broad principle of equity, that from every person standing in an attitude of trust and confidence in respect to another, a conduct marked with the most scrupulous good faith shall be required, that partners should act with the utmost candor and fairness towards each other, and with the most honorable exactness in the management of their joint business. That such has been the conduct of the house in Louisville in this transaction, is perfectly manifest. That they exercised their best judgment and utmost vigilance, may well be presumed; when it is recollected, they were acting for themselves, as well as others, and must have been sensible that one half of any loss incurred would fall upon them. There has been nothing done by them which would make one partner responsible to the other. The sales were according to the usual course of business. They were made to individuals apparently good at the time, and such as discreet and prudent men would have sanctioned. Nothing has transpired since the sales to make them respon- sible for this loss. They have not been instrumental in misleading, at least not intentionally, the other members of the firm. They have withheld no information that would have been useful to their partners. They have acted throughout in good faith, and there is no part of their conduct of which their partners have any just reason to complain.

Wherefore, there being no error in the decree of the Chancellor, it is affirmed.

*Pirtle* for appellants; *Guthrie* for appellees.